WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Havasupai Tribe, | No. CV-16-08290-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Anasazi Water Company LLC, et al., | |
| Defendants. | |

Pending before the Court are Defendants Anasazi, Hydro-Resources, Inc., Halvorson-Siebald Inc., Squire Motor Inns, Inc., City of Williams, Energy Fuel Resources (USA), Inc., EFR Arizona Strip, LLC and Anasazi Water Company's ("Moving Defendants") motions to dismiss, (Docs. 15, 18, 36, and 47).[1] For the following reasons, the Court grants the Moving Defendants' motions and dismisses the complaint with leave to amend within 90 days.

## BACKGROUND

The Havasupai Tribe ("Havasupai") is a federally recognized Indian Tribe located along the banks of Havasu Creek, a tributary to the Colorado River in the Grand Canyon. (Doc. 1 at 2.) The Havasupai have lived in this location for "time immemorial," and Havasu Creek provides the water necessary for the Tribe's survival. (Doc. 1 at 2.) The Havasupai rely on Havasu Creek to provide their drinking water, irrigation for their

---

[1] The majority of the Defendants joined in one or more of these motions, including Defendants William Collins, William & Lorraine Collins Family Trust, Grand Canyon Equipment, Inc., Randy Topel, and Topel Properties, LLC. (Docs. 55 & 86.)

crops, water for their livestock, and water for their many cultural and religious traditions. (Doc. 1 at 2.) Havasu Creek is primarily fed by the Redwall-Muav aquifer ("R-aquifer"). (Doc. 1 at 11.) The R-aquifer is a deep aquifer that runs throughout the Coconino Plateau. (*Id.*) It discharges 95.4% of its water in Havasu Canyon to form Havasu Creek. (*Id.*) The remainder of the R-aquifer goes on to feed springs within the Grand Canyon National Park. (*Id.*) In the last thirty years, the number of wells drilled into the R-aquifer to access its water has increased, allegedly impacting the Havasupai's rightful access to its water by lowering the amount of water that eventually flows into Havasu Creek. (Doc. 1 at 17.)

The Defendants consist of individuals and corporations that draw from the R-aquifer. (Doc. 1 at 4–7.) The Havasupai allege that the Defendants' use constitutes unlawful interference with the Havasupai's rights to the water in Havasu Creek, and thus bring this action for trespass and declaratory relief. (Doc. 1 at 18.) The Havasupai also request injunctive relief "prohibiting any withdrawal of groundwater in order to prevent any reduction of the flow of the Havasupai Waters." (Doc. 1 at 19.) In response, the Moving Defendants filed various motions to dismiss based on the absence of indispensable parties as well as the Havasupai's asserted failure to state a claim.[2] (Docs. 15, 18, 36, 47.)

///
///

---

[2] The Court's grant of the motion to dismiss does not decide all of the arguments asserted by the parties. For example, the Court has no need at this time to determine whether parties other than the United States are necessary and indispensable parties, whether the Plaintiffs have otherwise stated the claim against all Defendants with adequate plausibility, or whether the "reserved" argument set forth by some parties that the U.S. Supreme Court's appointment of a special master to adjudicate the allocation of water rights in the Colorado River divests this Court of jurisdiction. *See* Fed. R. Civ. P. 12(h)(2); *Amfac Mortg. Corp. v. Ariz.Mall of Tempe, Inc.*, 583 F.2d 426, 430 n.5 (9th Cir. 1978) (explaining that this "defense may be asserted at any time, at either the trial or appellate level, by either the parties or by the court.").

# DISCUSSSION

## I. Legal Standard

Pursuant to Rule 12(b)(7), a party may move to dismiss an action for failure to join a necessary and indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). The application of Rule 19 can be separated into three steps: first, identify whether a party is required; second, identify whether the party can be joined in the action; and third, if the absent party cannot be joined, determine whether the action may proceed in its absence. *See United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (outlining the "three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party.").

## II. Analysis

### A. The United States is a Required Party Pursuant to Rule 19(a).

A party is required under Rule 19(a) if "the non-party has a 'legally protected interest' in this action that would be 'impaired or impeded' by adjudicating the case without it" or if the court cannot provide "complete relief to the parties present without joining the non-party." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011) (internal citations omitted).

Notably, any right of the United States to groundwater discharged in the Grand Canyon from the R-Aquifer, or any other federal use of the R-Aquifer outside of the Havasupai Reservation, is not threatened by this action. At oral argument, the Plaintiff conceded that this lawsuit was limited to determining the respective rights among the current defendants and the Havasupai to access the water in the R-aquifer. For this same reason, the Tribe contends, there is no need for the Havasupai to join every landowner to this suit that has the potential to draw water from the R-Aquifer. Therefore, the Tribe argues, because it has not named the United States as a party, this action does not implicate the rights of the United States beyond its obligations to the Havasupai Tribe as its trustee.

///

Even so, the United States is a necessary party under Rule 19(a). The United States holds the Havasupai's reservation lands and the rights appurtenant thereto, in trust on behalf of the Tribe. Therefore it has a legal interest in this litigation based on its obligation as the legal owner of the rights asserted by the Tribe. *See generally Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254 (9th Cir. 1983) ("The United States, as the trustee holding legal title to all real property owned by the Tribe, obviously has an interest in this litigation and it will not be bound by any decree ensuing from this litigation unless it is formally joined as a party."); *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) ("Further, the United States is a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation."). The Plaintiffs did not present, and the Court is unaware, of any precedent that indicates the United States is not a necessary party when a Native American tribe seeks to protect its interests that are appurtenant to the property that the United States holds in trust for the tribe. All acknowledge the use of the R-Aquifer is such a right.[3]

Further, the absence of the United States as a party prevents the Court, as a practical matter, from being able to provide complete relief to the parties to this lawsuit. No party asserts that the United States as trustee would be bound by the outcome of this suit if it is not named as a party. *Carlson*, 510 F.2d at 1339. (holding that "[n]o decision made in an action in which the United States is not a party can bind the United States.") Thus, in the absence of the United States as a party to this action, the Defendants could spend great money, time and effort, and resolve this lawsuit with the Havasupai only to face the same or a substantially similar lawsuit again, brought by the United States on behalf of the Tribe. The United States is thus a necessary party because in its absence this action cannot afford complete relief to the parties.

///

---

[3] As is addressed below, whether an unnamed party is a necessary party is separate from the question whether it is an indispensable one. The Havasupai do not effectually argue that the United States is not a necessary party.

- 4 -

## B. Potential Joinder by the United States

The United States, however, cannot be involuntarily named as a party to this lawsuit. "The doctrine of sovereign immunity precludes suit against the United States without the consent of Congress; the terms of its consent define the extent of the court's jurisdiction." *Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States*, 895 F.2d 588, 592 (9th Cir. 1990). The United States has not waived its sovereign immunity in this case, and "no one, including Indian tribes, may sue the United States without first obtaining permission from Congress." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 998 (9th Cir. 2011).

Through the McCarran Amendment the Congress has given its consent for the United States to be sued in general water source adjudications. *See* 43 U.S.C. § 666(a) ("Consent is given to join the United States . . . where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit."). This lawsuit, however, is not a general water source adjudication. As the Tribe acknowledged at oral argument this is, in effect, a private trespass suit to determine water rights among the Tribe and select defendants. The McCarran Amendment does not give Congress's consent for the United States to be a party to such suits. *See Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996) (finding that the United States' waiver of sovereign immunity through the McCarran Amendment was "inapplicable to [plaintiff's] private suit for water rights").

However, the United States could still intervene in this case on behalf of the Havasupai tribe. If it chooses to do so, then the concerns regarding the prejudice to the Defendants, discussed above, would not apply and this case could go forward.

## C. Rule 19(b) Requires Dismissal with Leave to Amend

If a necessary party cannot be joined, the court must next determine "whether, in equity and good conscience, the action should proceed among the existing parties or

should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 outlines four factors to guide this determination: "(1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994); *see* Fed. R. Civ. P. 19(b). The appropriate considerations to be weighed in such cases are the practical ones. "When the necessary party is immune from suit, there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." *Quileute Indian Tribe*, 18 F.3d at 1460 (internal quotation and citations omitted) (affirming the district court's dismissal based on Rule 19(b)). For the following reasons, the Court finds that if the United States does not intervene in this action, the suit cannot go forward in equity and good conscience.

### 1. Prejudice to the Parties

As is outlined above, the Defendants cannot be afforded complete relief in the absence of the United States as a party to this suit. Further, the United States has interests in water in the R-Aquifer that are separate from those of the Tribe. While such interests may not be directly decided by this lawsuit since the Tribe has not named the United States, it would appear that the legal theory here advocated by the Tribe may be adverse to the non-Tribal interests of the United States in its use or protection that comes from the R-Aquifer

#### a. The *Puyallup* Exception

The threat of facing a duplicative lawsuit contributes to the reasoning behind the rule that "an action to establish an interest in Indian lands held by the United States in trust generally may not proceed without it." *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1069 (9th Cir. 2010). However, the Ninth Circuit has recognized a *Puyallup* exception to this rule in a few cases in which tribes have filed suits to protect their own interest in tribal lands, and "the United States' interests [are] 'shared and adequately represented' by the plaintiff tribes." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop*

*Colony, Cal.*, 637 F.3d at 1002; *see Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254 (9th Cir. 1983) ("Nonetheless, the rule is clear in this Circuit and elsewhere that, in a suit by an Indian tribe to protect its interest in tribal lands, regardless of whether the United States is a necessary party under Rule 19(a), it is not an indispensable party in whose absence litigation cannot proceed under Rule 19(b)."); *Fort Mojave Tribe v. Lafollette*, 478 F.2d 1016, 1017–18 (9th Cir. 1973) (same).

Nevertheless, the *Puyallup* exception does not apply here because, among other reasons, it is not clear that the interests of the United States are "shared and adequately represented" by the Havasupai Tribe. The Havasupai's complaint in this case asserts a theory that would prohibit any surface owner of land on the entire Coconino Plateau from accessing the water in the R-Aquifer which lies underneath it. This plateau underlies a vast area of northern Arizona that extends for apparently thousands of square miles beyond any reservation land. Identified Defendants in this case range from Tusayan, Arizona to Williams, Arizona. As is explained, the scope of the potential water users apart from the Tribe is extensive and includes the United States itself other than in its role as the trustee of the Tribal interests. In addition to the discharge of water from the aquifer in springs in the Grand Canyon that are on non-Tribal lands, it is not clear that other operations of the national park, national forest, or on other federal lands or operations atop the aquifer may draw water or wish to draw water from the R-Aquifer.

Further, the exception the Havasupai seek to utilize has only ever been applied to cases involving relatively small tracts of real estate in which the United States had no potential adverse interest. *See generally Lyon*, 626 F.3d at 1251 (involving a lawsuit to determine the proper owner of a 257-acre parcel of land); *Puyallup Indian Tribe*, 717 F.2d at 1251 (determining who had the rights to a newly exposed 12-acre tract of river bed); *Fort Mojave Tribe*, 478 F.2d at 1016 (involving a lawsuit by a tribe seeking quiet title to land). None of those cases involve water rights, which are distinguishable from cases involving land due to 1) the difference in potential claimants to rights in the water source as well as 2) the presence of a limited waiver of sovereign immunity. Due to the

large number of potential claimants that reside on the land above the R-Aquifer, the threat posed by inconsistent judgments is far greater than that of a typical land rights case. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976) (discussing the dangers of piecemeal water rights litigation), as is the potential that the Tribe cannot adequately represent the interests of the United States. Further, unlike in land cases, and as is set forth in further detail below, the Tribe can file a lawsuit with the United States as a party if it follows the procedure outlined in the McCarran Amendment. In sum, in *Puyallup* and *Lyons* the disputes at issue were related to a small grant of land that was completely surrounded by or immediately adjacent to reservation land for which there was no waiver of sovereign immunity. This case involves declaring exclusive rights to a massive aquifer that dwells under a large portion of northern Arizona, it is not clear that the United States would share the Tribe's viewpoint as to the exclusive ownership of such a massive aquifer[4], and there appears to be a waiver of sovereign immunity sufficient to decide such rights.

### 2. Shaping Relief to Lessen Prejudice

As to the second factor, there appears to be no feasible way to shape the relief to lessen the prejudice to either party. *See Carlson*, 510 F.2d at 1337 ("When an interest of the federal government is involved in a suit and a judgment cannot be rendered without affecting that interest, the government must be made a party to the action.").

### 3. The Availability of an Adequate Remedy

Because an adequate remedy cannot, as a practical matter be awarded without the intervention of the United States, the third factor also weighs in favor of dismissal. At oral argument, Havasupai's counsel repeatedly stressed that the Tribe is seeking a

---

[4] Tellingly, the Tribe would not assert to the Court at oral argument or in its briefing, that the United States would be bound by the result of this lawsuit as between the Havasupai and the Defendants. The Tribe thus cannot successfully assert to this Court that it has "shared interests" with the United States that it is adequately representing that would justify applying the *Puyallup* exception. *See Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal.*, 637 F.3d at 1002 (declining to apply the *Puyallup* exception where the interests of the United States were not "shared and adequately" represented by the plaintiff tribes).

declaration only as to the named Defendants and only as to the R-Aquifer. However, even if the Havasupai only seek relief against the named Defendants, any result would be ephemeral without the assurance that it would constitute a binding, final judgment. The only way to obtain that assurance is if the United States intervened as a party in this action.

### 4. The Availability of an Alternate Forum

The fourth factor also weighs in favor of dismissal because there appears to be an alternative forum for the Havasupai to bring this claim, although it is not the Tribe's preferred forum. Arizona permits water users to "file a petition to have determined in a general adjudication the nature, extent and relative priority of the water rights of all persons in the river system and source." A.R.S. § 45-252. Furthermore, the United States waived its sovereign immunity to such a forum through the McCarran Amendment, and thus it could be joined in the state forum. At oral argument, the Havasupai argued that the state forum would be inadequate because Arizona law does not generally recognize or protect groundwater rights. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, ("*Gila River II*"), 175 Ariz. 382, 391, 857 P.2d 1236, 1245 (1993) (explaining that while Arizona law does protect some forms of underground water, including a narrowly defined class of water called subflow, it does not protect general groundwater rights). However, Arizona's general stream adjudication process covers water rights that arise under Arizona law as well as "all water subject to claims based upon federal law." A.R.S. § 45-251. As explained by the Complaint, the Havasupai assert that their right to the water contained in the R-Aquifer stems from their federally-reserved water rights, which include rights to groundwater. (Doc. 1 at 3.) The Arizona Supreme Court has found that federally-reserved water rights, including groundwater rights, are entitled to protection and recognition during the general adjudication process. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, "*Gila III*," 195 Ariz. 411, 420, 989 P.2d 739, 748 (1999) (explaining that "federal reserved water rights doctrine applies not only to surface water but to groundwater," and

that the extent of a tribe's rights is a fact intensive determination that will be analyzed on a case by case basis during general adjudications). Therefore, under the reasoning of *Gila III*, it appears that the Havasupai do have an alternate forum to determine their rights to the R-Aquifer to which the United States may be named as a party due to its McCarran Amendment waiver of sovereign immunity.

The Havasupai also assert that there is no need to have a general adjudication at this time, because this lawsuit seeks to establish the relative rights to use the aquifer among a select group of defendants only. While the Havasupai may prefer to proceed in a piecemeal fashion against select Defendants to establish their rights to the R-Aquifer, the McCarran Amendment does not allow the United States to be brought in as a Defendant in such cases absent its decision to voluntarily intervene. *See Gardner v. Stager*, 103 F.3d at 888 (finding that the McCarran Amendment was "inapplicable to [plaintiff's] private suit for water rights"). This is presumably because there is a "clear federal policy" against "piecemeal adjudication of water rights in a river system." *Colorado River Water Conservation Dist.*, 424 U.S. at 819 (explaining that the concern of piecemeal litigation "is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings."). While of course the Plaintiff can choose the claim it wishes to pursue, it cannot, in this setting, pursue a claim for which there is an immunity bar when there is an available alternative.

Upon weighing the factors of Rule 19(b), this lawsuit cannot proceed forward without the United States for the reasons stated above. Therefore, the Defendants' motions to dismiss are granted. (Docs. 15, 18, 36, and 47.)

All parties agreed at oral argument that granting the Havasupai an additional 90 days to amend their complaint to seek the intervention of the United States as a party will not prejudice them. Therefore, the Havasupai have 90 days in which to obtain the addition of the United States as a party Plaintiff. If the United States chooses to

intervene, then an amended complaint must be filed within 90 days noting their intervention.  Otherwise, upon the expiration of 90 days, this case will be dismissed

**IT IS THEREFORE ORDERED** that the Defendants' Motions to Dismiss, (Docs. 15, 18, 36, and 47), are **GRANTED**.  The Complaint is dismissed with leave to amend.

**IT IS FURTHER ORDERED** granting the Plaintiff ninety (90) days to amend the Complaint if during that period the United States decides to intervene as a party Plaintiff.

**IT IS FURTHER ORDERED** that if Plaintiff does not file an amended complaint that includes the United States as a named party **within ninety (90) days** of the filing of this Order, the Clerk of the Court is directed to terminate this matter on **July 18, 2017** without further notice.

Dated this 18th day of April, 2017.

_____
Honorable G. Murray Snow
United States District Judge